IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNIE JACKSON | : | (Judge Brann) |
| | : | |
| Plaintiff, | : | No. 4:12-cv-01719 |
| | : | |
| v. | : | |
| | : | |
| HOOPES TURF FARM | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
April 7, 2015

Pending before this Court is a Motion for Summary Judgment (ECF No. 25) filed by Defendant Hoopes Turf Farm.  The motion seeks to dismiss Plaintiff's claims for hostile environment sexual harassment and gender discrimination, Title VII retaliation, and discrimination under the Pennsylvania Human Relations Act (hereinafter, the "PHRA").[1]  The matter has been fully briefed and is now ripe for disposition.  In accordance with the following reasoning, Defendant's Motion for Summary Judgment is granted in part and denied in part.  With respect to Plaintiff's claims for hostile environment sexual harassment and gender discrimination, Defendant's motion is denied.  With respect to Plaintiff's claim under the PHRA, to the extent it is based on those issues, Defendant's motion is denied.  However, Defendant's motion is granted with respect to Plaintiff's claim

---

[1] Defendant does mention Plaintiff's claim for gender discrimination in its motion; however, as will be addressed, Defendant does not make any argument in favor of dismissal of that claim.

for retaliation under Title VII, and that claim is dismissed.  Consequently, to the extent Plaintiff's PHRA claim is based on her claim of retaliation, that count is similarly dismissed.

## I. BACKGROUND

Plaintiff Jeannie Jackson has brought this action alleging hostile environment sexual harassment, gender discrimination and unlawful retaliation for protected conduct under Title VII.  She also alleges violations of the PHRA.  Many of the facts underlying these claims are disputed, and the parties particularly disagree on the interpretation of those facts; the Court will therefore give credence to the evidence favoring the Plaintiff, as the nonmovant, as long as that evidence is properly supported, and will acknowledge Defendant's version of the facts when relevant to the instant motion.  *See infra*, Section II.

For all times relevant to this case, Plaintiff was employed as a driver by Defendant Hoopes Turf Farm, a trucking company.  Def.'s Statement of Facts ¶ 1, June 23, 2014, ECF No. 27 (hereinafter "Def.'s SOF").  The instant action relates to a series of sexually harassing actions taken towards Plaintiff on the part of her employer's owner, Preston Hoopes.  The timeline of the alleged conduct is not entirely clear to the Court; however, the relevant conduct generally occurred between December 2009, when the harassment began, and January 2011, when Plaintiff was terminated from her employment at Hoopes Turf Farm.

As one of the only female employees at Hoopes Turf Farm, Plaintiff alleges that she first began to feel uncomfortable during the Christmas party held by the company in December 2009. Pl.'s Counter Statement of Facts ¶ 21, July 31, 2014, ECF No. 32 (hereinafter "Pl.'s Counter SOF"); Pl.'s Statement of Facts ¶ 6, July 31, 2014, ECF No. 31 (hereinafter "Pl.'s SOF").  At that party, Plaintiff was outside smoking with several other people when Mr. Hoopes asked everyone to come inside for a speech.  Def.'s SOF ¶ 8.  Plaintiff alleges that while he was talking to the group he was staring at her crotch. *Id* at ¶ 9.

Sometime thereafter[2], Plaintiff needed help fairly late in the evening in getting a king pin released from her truck so she contacted Mr. Hoopes and asked for his assistance. *Id* at ¶ 10.  When he arrived, but before exiting his vehicle, Mr. Hoopes made two "wolf calls," which made Plaintiff uncomfortable.  *Id* at ¶ 11.  A third incident occurred after an unspecified amount of time, in which Mr. Hoopes asked Plaintiff if she would stay the night at his house when her car would not start.[3] *Id* at ¶ 13.  There is a dispute of fact as to whether Mr. Hoopes' wife was home at the time he asked Plaintiff to stay the night and as to whether Mr. Hoopes

---

[2] At the time of her deposition, Plaintiff could not recall an exact timeline for many of the incidents of sexual harassment that she alleges.  The Court therefore assumes, without any evidence to the contrary, that the events occurred chronologically in the order in which they are stated in Plaintiff's Amended Complaint and addressed by the parties in their briefings.

[3] As this Court understands the situation, Hoopes Turf Farm is located near or adjacent to Mr. Hoopes' private residence.

alluded to that fact in his invitation to Plaintiff. *Id* at ¶ 14; Pl.'s SOF ¶ 14.[4]  When

Plaintiff choose not to stay the night, Mr. Hoopes lent her his wife's car to drive.

Def.'s SOF ¶ 15.

On March 26, 2010, Mr. Hoopes called Plaintiff and asked her to polish a

semi-truck used in the business which she agreed to do. *Id* at ¶ 16.  While she was

polishing the truck, Mr. Hoopes began to help her and talked to her about

inappropriate topics. *Id* at ¶ 17.  Specifically, Mr. Hoopes talked about sex with his

wife before they got married, as well as catching his father in the bathroom at their

house with his wife's mother. *Id.*  Mr. Hoopes, however, denies making any

inappropriate comments to Plaintiff while she was polishing the truck. Pl.'s

Counter SOF ¶ 26.

Less than a month later, on April 11, 2010, Mr. Hoopes insisted that Plaintiff

ride in the front with him on the way back from a job because "he did not want to

look at Parsell's ugly mug." Def.'s SOF ¶ 18; Pl.'s SOF ¶ 18.[5]  Finally, at another

point in time, as Mr. Hoopes was demonstrating to Plaintiff how to use a new

---

[4] In the depositions of Mr. and Mrs. Hoopes, both recalled Mrs. Hoopes being home on that evening because they had an argument when Mr. Hoopes allowed Plaintiff to use his wife's car.  Plaintiff stated in her deposition that she was unaware as to whether Mrs. Hoopes was home at all.  She was not directly asked if Mr. Hoopes had informed her that his wife was not at home.

[5] The Court is somewhat confused by this allegation.  It appears from Plaintiff's Statement of Facts that it arises from Plaintiff's allegation that she and Mr. Hoopes did have sex sometime between when she polished his truck and when he requested that she sit in the front with him, and that during that encounter Plaintiff was intoxicated. However, Plaintiff has not explained how the allegation of a sexual relationship changes the nature and meaning of Mr. Hoopes' action in insisting Plaintiff sit up front with him.  Similarly, the Court is not aware of the timing or circumstances of this alleged sexual relationship because the parties have included very little such information within their briefings and statements of facts.  Moreover, Mr. Hoopes disputes that there was ever any sexual relationship between him and Plaintiff.

dump truck, his crotch touched her left hand, which was resting upon her left knee, and after that Plaintiff moved her hand away.  Def.'s SOF ¶ 19.

Sometime in mid-July 2010, Plaintiff complained several times to Mr. Hoopes that she was uncomfortable with the way he was acting towards her. *Id* at ¶ 20; Pl.'s SOF ¶ 20.  Because Hoopes Turf Farm did not have a human resources department during the time in which Plaintiff was employed by the company, she had no recourse but to go directly to Mr. Hoopes with her complaints. Pl.'s Counter SOF ¶ 13-15.  After that, Plaintiff testified that things both at work and between her and Mr. Hoopes changed "majorly." *Id* at ¶ 21.  She alleges that she was treated unfavorably at work in a variety of ways.  Specifically, she claims that there were several instances when she would get called into work even though she had taken personal time, and that she would request time off but never hear back about that request. Pl.'s SOF ¶ 25; Def.'s SOF ¶ 28.  Moreover, she alleges that jobs were cancelled without notice to her, so that she would necessarily drive into work before being informed that the job was cancelled and she would not be paid for that time. Def.'s SOF ¶ 28-29.

Plaintiff alleges several other retaliatory actions taken in response to her complaint regarding Mr. Hoopes' sexually harassing behavior.  For one, Plaintiff's transmission broke in August 2010 and she had to wait four hours for the garage person to pick her up; however, she was not paid for that four hours of waiting

time. *Id* at ¶ 26; Pl.'s SOF ¶ 26.  Additionally, there was one incident in which Plaintiff spoke with Robin Vetter, Defendant's dispatcher, about getting a hotel room when she was on a job like two other drivers were able to do, but after alleging that she had to discuss it with Mr. Hoopes, Ms. Vetter never got back to Plaintiff on that issue. Def.'s SOF ¶ 27.

Another incident occurred when Plaintiff asked Mr. Hoopes for a letter of recommendation because she wished to change jobs due to the way she was being treated at work. *Id* at ¶ 30; Pl.'s SOF ¶ 30.  Mr. Hoopes told her that he would not write her a letter of recommendation because he did not do that, but that she could have a prospective employer call him. Def.'s SOF ¶ 31.  She also alleges retaliation in that Mr. Hoopes had called out five trucks to work a job but did not call out Plaintiff to do that job. *Id* ¶ 32.  At yet another time, Mr. Hoopes asked Plaintiff to drive a roller truck in Coudersport, but the location he had given her was incorrect and she was required to contact Mr. Hoopes to determine the correct location of the job. *Id* at ¶ 33. There was also an incident in which the pump on Plaintiff's assigned truck kept freezing.  When she requested to switch out the truck so that the pump could thaw in the garage, Mr. Hoopes responded that she should keep her truck running and that she should not call him back if it was not something important. *Id* at 34-35.

Finally, there is also at issue in this case the existence of several voicemails left for Plaintiff by Mr. Hoopes in which he calls her "beauty" and "sleeping beauty," and tells her that she is playing "hard to get" and that "nobody can touch ya." Pl.'s Counter SOF ¶ 1-5.  The Court is unsure chronologically when these voicemails were left on Plaintiff's phone, whether before she complained to Mr. Hoopes of his conduct towards her, or after.

On January 10, 2011, Plaintiff was terminated from her position with Hoopes Turf Farm. Def.'s SOF ¶ 39.  Her termination took place the day after an incident in which the brakes on Plaintiff's assigned truck caught fire.  *Id* at ¶ 36.  When she called Mr. Hoopes to tell him about it, he told her that she must have had the spike brake on, although she responded that she never used the spike break. *Id.*  Several reasons were given for her termination, in addition to the incident just described.  For one, Defendant alleges that Plaintiff ran a new truck into a ditch and thereby incurred significant costs of repair, although Plaintiff denies having done this. *Id* at ¶42; Pl.'s SOF ¶ 42.  As another reason, Defendant contends that Plaintiff ran her truck into a building and bent the ladder; however, Plaintiff denies this and claims that she merely tapped an exhaust fan with her truck ladder. Def.'s SOF ¶ 43; Pl.'s SOF ¶ 43.  Finally, Defendants asserts that Plaintiff damaged a tool box on a company truck when she was making a turn and hit an abutment placed there by another company, although Plaintiff claims that this accident was not her

fault. Def.'s SOF ¶ 44; Pl.'s SOF ¶ 44.  Defendant alleges that all of these accidents necessitated repairs in the total amount of $1794.84; however as stated Plaintiff denies being responsible for these repairs. Def.'s SOF ¶ 45; Pl.'s SOF ¶ 45.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" where it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case.  *Id.* at 331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).  Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Although the Court may consider any materials in the record, it need only consider those materials cited. Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

### A. Sexual Harassment Hostile Environment

Defendant first argues that Mr. Hoopes' alleged conduct towards Plaintiff was neither severe nor pervasive and therefore she has failed to make out a prima facie claim of hostile environment sexual harassment. In that vein, it argues that every complained of action by Plaintiff was either interpreted incorrectly by her or was not as serious as Plaintiff suggests. Plaintiff all but ignores Defendant's argument and instead focuses on the following steps of the *McDonnell Douglas* burden-shifting analysis, apparently assuming, with little explanation, that she has already set forth a prima facie claim despite Defendant's argument to the contrary. To the extent she does directly counter Defendant's argument she merely claims, without citing any law to support her allegations, that it is not for the Defendant, at

10

this stage in the proceeding, to make sweeping determinations as to whether the conduct alleged in this case is sufficiently offensive.

Title VII prohibits discrimination based on an individual's race, color, religion, sex, or national origin with respect to his "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2. The Supreme Court of the United States has clarified that the phrase "terms, conditions, or privileges" "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). To bring an actionable claim for sexual harassment because of an intimidating and offensive work environment, a plaintiff must establish that: (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).

Because Defendant only disputes the existence of the second element, the Court will not consider any of the other elements at this juncture. To prove that the

11

harassment was severe or pervasive, the plaintiff must demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. The plaintiff need only prove that the conduct is severe *or* pervasive, not both. *See id.* "[S]ome harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Jensen v. Potter*, 435 F.3d 444, 449 n. 3 (3d Cir. 2006). "Therefore, a single incident of severe harassment in the workplace may contaminate the work place to such a high degree that it will be considered hostile. Where such harassment is not severe, incidents of harassment must occur either in concert or with regularity." *Rorrer v. Cleveland Steel Container*, 712 F.Supp.2d 422, 428 (E.D.Pa. 2010).

Determining whether any given conduct is severe or pervasive is far from an exact science. In making this determination, the United States Court of Appeals for the Third Circuit has counseled that the court examine all of the relevant circumstances surrounding the discriminatory conduct, considering factors such as: (1) the frequency; (2) the severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with the employee's work performance; or (5) the effect on the

employee's psychological well-being. *See Harris*, 510 U.S. at 23; *see also Arasteh v. MBNA America Bank, N.A.*, 146 F.Supp.2d 476, 495 (D.Del. 2001).  This constitutes a non-exhaustive list, and no single factor is required or dispositive. *See Harris*, 510 U.S. at 23.

As a preliminary issue, Defendant's allegation that Plaintiff was mistaken in her interpretation of Mr. Hoopes' conduct is problematic for the purposes of the instant motion.  The perceptions and interpretations of the parties are all factual disputes that are not to be decided by this Court on a motion for summary judgment.  For instance, Defendant argues that it "is a matter of [Plaintiff's] opinion that Mr. Hoopes stared at her crotch" during the 2009 Christmas party because "Mr. Hoopes may have looked down as he spoke for other reasons assuming he looked down at all."  Though Defendant claims that Mr. Hoopes was not staring at Plaintiff's crotch, she maintains that he was doing so.  This is the very essence of a factual dispute, and it is for a factfinder to determine what actually happened in that situation.[6]

---

[6] Defendant's arguments that factual issues do not exist as to all of Plaintiff's other allegations are similarly flawed. Its contention that Mr. Hoopes' invitation to Plaintiff to stay the night does not suggest that he was requesting sexual favors in return is countered by Plaintiff's own interpretation of the event in which she claims that sex was his objective.  Similarly, this Court is unable to make the determination that Mr. Hoopes rubbed his crotch against Plaintiff's hand inadvertently when she disputes that inadvertence.  Finally, Defendant cannot unilaterally characterize the voicemails that Mr. Hoopes left for Plaintiff as "in the nature of joking," and then maintain that there is no dispute as to that characterization.  In its reply brief, Defendant further argues that these voicemails must be understood in context in a way that is not sexually harassing.  However, Defendant's use of the word "probably" and his acknowledgement that "[i]t is difficult to properly evaluate the voicemails relied on by Plaintiff without knowing Plaintiff's voicemail greeting" only serve to highlight the existence of factual disputes that the Court is not empowered to decide.

In this case, the Court is unwilling to determine as a matter of law, even at this juncture, whether Mr. Hoopes' conduct towards Plaintiff was severe or pervasive because there are too many omitted facts and too many factual disputes between the parties. *See Rorrer*, 712 F.Supp.2d at 429 ("[T]he severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'") (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)). There is no doubt that in many instances, particularly where the facts are undisputed, the court is able to determine as a matter of law whether certain conduct is severe or pervasive; however, such is not true in the instant matter. In this case, the parties dispute virtually every fact and every implication of those facts.[7] Consequently, the Court will deny Defendant's motion for summary judgment on Plaintiff's hostile environment sexual harassment claim, pending a determination by the factfinder as to what actually occurred between Plaintiff and Mr. Hoopes.

## B. Gender Discrimination

Under Title VII, "[i]t shall be an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to

---

[7] Importantly, Defendant has brought up an argument in its reply brief that Plaintiff and Mr. Hoopes did have a consensual sexual relationship which therefore changes the nature and determination of Plaintiff's claim of sexual harassment. However, this issue is, in and of itself, a factual issue. Though Defendant relies upon Plaintiff's deposition testimony, it is necessary to note that Mr. Hoopes himself disputes the occurrence of this incident and denies having had any kind of sexual relationship with Plaintiff. How this fact, if proven, might fit into an analysis of Plaintiff's sexual harassment claim is impossible to know pending a determination by the factfinder as to what version of the story is correct and what, if any, the exact circumstances of that sexual relationship were.

14

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2. To establish a prima facie case of gender discrimination under Title VII, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. See *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

It is unclear what argument, if any, Defendant is making in order to dismiss Plaintiff's gender discrimination claim. In its "Statement of Questions Presented," Defendant states that there is no genuine issue of material fact whereby a reasonable jury could find in favor of the Plaintiff on her hostile work environment sexual harassment and gender discrimination claims. However, the only argument that Defendant makes relates to the severity or pervasiveness of Mr. Hoopes' conduct towards Plaintiff. The Court has already addressed this issue in the previous section. Severity or pervasiveness is not, however, a required element of a gender discrimination claim. Rather, a gender discrimination claim requires only that the plaintiff have suffered an adverse employment action under circumstances of intentional discrimination. Consequently, to the extent Defendant does request dismissal of Plaintiff's gender discrimination claim, summary judgment will be

15

denied on that claim because Defendant has not argued for dismissal on any specific issue or element.

## C. Retaliation Claim

Defendant next contends that Plaintiff's retaliation claim must fail because there was no significant adverse action taken against Plaintiff after she told Mr. Hoopes that she felt uncomfortable with the current situation. Specifically, it concedes that her termination was an adverse action but argues that all other purportedly retaliatory actions taken against her were objectively de minimus. Moreover, Defendant argues that the record in the case fails to establish causation between Plaintiff's conversation with Mr. Hoopes and her ultimate termination after a six month lapse in time. Plaintiff responds that she has made out a prima facie case for retaliation under Title VII because she complained to Mr. Hoopes about his conduct three times and she was terminated within a reasonable time after making these complaints. Furthermore, she argues that circumstantial evidence of causation exists in various forms.[8]

Section 704(a) of Title VII forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . under this subchapter." 42

---

[8] Plaintiff also argues another element not currently in issue, that is, that Plaintiff's conversation with Mr. Hoopes was protected under Title VII. Because Defendant has not argued this element as a means for dismissal, the Court will not address it here.

16

U.S.C. § 2000e-3(a).  In order to establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she was engaged in protected activity; (2) she suffered an adverse employment action subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the adverse activity. *See Woodson v. Scott Paper Co*., 109 F.3d, 913, 920 (3d Cir. 1997).

"The scope of the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Consequently, "a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citations omitted).  "In evaluating whether actions are materially adverse, we must remain mindful that 'it is important to separate significant from trivial harms' because '[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Id* at 346 (citing *Burlington*, 548 U.S. at 68).

To establish causation, the third element of a prima facie case, the plaintiff must demonstrate a connection between her opposition to the unlawful discrimination and an action that might have dissuaded a reasonable worker from making a similar charge of discrimination. *See id* at 342. "The ultimate question in any retaliation case is an intent to retaliate *vel non*." *Jensen*, 435 F.3d at 449 n.2. It is only once the plaintiff has established a prima facie case of retaliation involving these three elements that the *McDonnell Douglas* framework operates to shift the burden back to the Defendant. Because this Court holds, as a matter of law, that Plaintiff did not meet her burden of proving a prima facie case, the Court need not delve into that analysis.

In this case, Plaintiff claims that after she confronted Mr. Hoopes regarding his sexual harassment, he began to discriminate against her in various ways, ultimately leading to her termination from the company. Specifically, she alleges that: (1) she was not paid for four hours of waiting time when her truck broke down; (2) Defendant several times cancelled her shift without telling her so that she had already driven into work; (3) she was sometimes not notified when she was granted time off; (4) she did not receive a hotel room like two other drivers on one trip; (5) she asked for, but was not given, a letter of recommendation from Mr. Hoopes; (6) she was assigned a truck on one trip with a pump that kept freezing and Mr. Hoopes did not assist her in getting a new truck; and (7) she learned at one

18

point that five trucks were working at a site and she had not been called in to work that job.  Finally, (8) she alleges that on her last day of work she was assigned a truck with heater problems and the breaks on the truck caught fire, an incident for which she was terminated.

With the exception of Plaintiff's eventual termination, none of the other incidents cited above are materially adverse actions.  Rather, all of these minor employment issues are no more than trivial harms, if even that.  Many of them do not appear harmful but are rather everyday issues that an employee must deal with in the ordinary course of her employment. *See Riley v. Delaware River and Bay Authority*, 661 F.Supp.2d 456, 470 (D.Del. 2009) ("The *Burlington* court stressed that the antiretaliation provision of Title VII does not protect an individual from all retaliation, but only from retaliation that produces injury or harm."); *see also Burton v. Pennsylvania State Police*, 990 F.Supp.2d 478, 510 (M.D.Pa. 2014) (Rambo, J.) (finding that several small actions, including a temporary reassignment, a threat of termination, a reprimand, and an allegation of a failure to fully investigate an internal discrimination claim did not constitute adverse action). While it is true that actions which are not materially adverse by themselves can be materially adverse when considered together, *see Brennan v. Norton*, 350 F.3d 399, 422 n.17 (3d Cir. 2003) ("The cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimus* if considered in

19

isolation."), in this case, this Court does not believe that any reasonable jury could determine that such minor actions, even taken together, could be materially adverse actions against the Plaintiffs.  Several of the actions cannot even be considered adverse at all.

Nevertheless, there is no dispute that Plaintiff's termination is an adverse action within the meaning of a retaliation claim.  However, Plaintiff has failed to uphold her burden in proving that her termination was causally related to her complaints to Mr. Hoopes.  Though Plaintiff does point to "other evidence" which could lead a jury to conclude that Defendant retaliated against Plaintiff, none of that "other evidence" provides any circumstantial evidence of causation. Specifically, Plaintiff points to the fact that: (1) Plaintiff testified that Mr. Hoopes had sex with her while she was under the influence of alcohol; (2) she testified that things changed after she slept with Mr. Hoopes; and (3) Mr. Hoopes had considerable control over Plaintiff's day-to-day assignments.  That Mr. Hoopes had sex with Plaintiff at some unspecified point in time before she complained about his sexual harassment has no bearing on the causation of her termination because she is not alleging that sleeping with Mr. Hoopes is the protected conduct for which she was then retaliated against; if anything, that event only provides one more fact for her sexual harassment claim.

Moreover Plaintiff's perspective that "things changed" after she slept with Mr. Hoopes is irrelevant for the same reason; at best, Plaintiff can use this evidence to prove that she was retaliated against for sleeping with her boss, which is not protected activity under Title VII. Finally, Mr. Hoopes control over her assignments is similarly inapplicable to prove causation. In fact, this Court is at a loss to understand how this evidence factors into a determination of causation at all.

Plaintiff's termination occurred six months after she made her complaint, and she has pointed to no circumstantial evidence that could lead this Court to conclude that a reasonable jury could find in her favor on this element. *See Culler v. Shinseki*, 840 F.Supp.2d 838, 847 (M.D.Pa. 2011) (Mannion, J.) ("[T]he protected activity and alleged retaliation must be extremely close in time for such proximity to raise an inference of discrimination on its own."); s*ee also LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (holding that three months between the occurrence of protected activity and subsequent adverse action was not sufficient without additional circumstantial evidence to create an implication of retaliatory motive); *McCLoud v. United Parcel Service, Inc.*, 543 F.Supp.2d 391, 401 ("In determining whether Plaintiff has met the causation element of the prima facie case, we consider all evidence that is 'potentially probative of causation.'") (quoting *Farrell v. Planters Lifesavers Co.*,

206 F.3d 271, 279 (3d Cir 2000).  Consequently, Defendant's motion for summary judgment is granted as to Plaintiff's Title VII retaliation claim.

## D. PHRA

Finally, Defendant argues that Plaintiff's claims under the PHRA should be dismissed for the same reasons it has argued with regard to the claims made under Title VII. Plaintiff responds only that because Defendant's motion for summary judgment must be denied on the above-referenced grounds, it must be denied on Plaintiff's PHRA claim as well.

The elements of hostile environment sexual harassment and gender discrimination claims under the PHRA are analogous to those under Title VII. See *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000) ("The analysis required for adjudicating Goosby's claim under PHRA is identical to a Title VII inquiry.").  Similarly, the elements of a retaliation claim under the PHRA are analogous to those under Title VII. See *Hussein v. UPMC Mercy Hosp.*, 466 Fed.Appx. 108, 111 (3d Cir. 2012); *see* 43 Pa.S. § 955(d) (Under the PHRA, it is unlawful for an employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge . . . under this act.").

Consequently, because this Court has already determined that summary judgment is denied as to Plaintiff's hostile environment sexual harassment and

22

gender discrimination claims, her PHRA claim will similarly survive to the extent that it is based on those issues.  However, because the Court has also held that Plaintiff's claim for retaliation must be dismissed, her PHRA claim must be dismissed to the extent it is based on those issues.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Defendant's Motion for Summary Judgment is granted in part and denied in part.  With respect to Plaintiff's claims for hostile environment sexual harassment and gender discrimination, Defendant's motion is denied.  With respect to Plaintiff's claim under the PHRA, to the extent it is based on those issues, Defendant's motion is denied.  However, Defendant's motion is granted with respect to Plaintiff's claim for retaliation under Title VII, and that claim is dismissed.  Consequently, to the extent Plaintiff's PHRA claim is based on her claim of retaliation, that count is similarly dismissed.


BY THE COURT


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge